No. 16-0738 - <u>State of West Virginia ex rel. Pressley Ridge, et al. v. West Virginia Department of Health and Human Resources, et al.</u>

**FILED**

**November 17, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, dissenting:

The majority unwisely invokes this Court's "inherent authority" to interject itself into a contractual dispute between the respondents, the West Virginia Department of Health and Human Resources and its Bureau for Medical Services and Bureau for Children and Families (collectively "respondents" or "the Department"), and the petitioners, private companies that provide facilities for the residential care and treatment of juveniles in West Virginia. While I will continue to act, as I always have, in the best interests of the children in our state, mandamus relief is unwarranted in this instance. Accordingly, I am impelled to dissent.

To be sure, this matter is essentially a contractual dispute involving changes to the reimbursement of youth residential services under an amendment to the State Medicaid Plan. As the circuit court aptly recognized in its order denying the petitioners' request for injunctive relief:[1]

> The discretion to contract on behalf of the State lies in
> the executive branch. West Virginia law vests the Secretary [of

---

[1]The petitioners did not appeal the circuit court's order. Having enjoyed a test run before the circuit court, and evading appellate review of their unsuccessful attempt to obtain injunctive relief, the petitioners now seek a writ of mandamus in this Court.

1

the Department] with the sole authority and discretion to contract in the name of the Department on the State's behalf. Specifically, State law authorizes the Secretary to "[s]ign and execute in the name of the state by the State Department of Health and Human Resources any contract or agreement with the federal government or its agencies, other states, political subdivisions of this state, corporations, associations, partnerships or individuals[.]" W.Va. Code § 9-2-6(4). Yet Petitioners ask this Court to disregard that authority and instead commandeer the Department's executive authority to contract for residential treatment services without identifying how the Department has purportedly violated the law. Such an injunction would clearly violate the separation of powers between the executive and the judiciary.[2]

Nonetheless, the petitioners have managed to create a quagmire of speculation that juveniles being housed in these residential facilities will be harmed under the respondents' new provider agreements, absent the respondents' promulgation of new or revised legislative rules. They do so as a means of attacking what is within the sole prerogative of the executive branch: administration of the state Medicaid program. Again, as the circuit court found:

> This interference in executive discretion is amplified because Petitioners are also asking this Court to interfere with the Department's authority in administering the West Virginia Medicaid program. Medicaid is a federal-state partnership, and federal law requires each state to designate a "single state agency" to operate their respective Medicaid programs. 42 U.S.C. § 1396a(a)(5). That entity in West Virginia is the Bureau for Medical Services. W.Va. Code §§ 9-1-2(n) & 9-2-13(a)(3). Critically, federal law prohibits the designated single state

---

[2]*See* W.Va. Const. art. V, § 1 ("The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time[.]").

2

agency delegating its authority to "issue policies, rules, and regulations on program matters," 42 C.F.R. § 431.10. Yet Petitioners are asking this Court to interfere in the Department's administration of the Medicaid program and place the decision of how providers are to be reimbursed with the providers themselves. Simply put, Petitioners cannot command such interference in the Medicaid program.

(Footnote added.).

The petitioners have presented this Court with myriad assertions concerning the interplay between various new policies and existing statutory and regulatory law. Critically, however, the petitioners have utterly failed in their burden to show a clear legal right to the relief they seek: a writ compelling the respondents to engage in legislative rule-making prior to implementation of the new policies/contracts. *See* Syl. Pt. 2, *State ex rel. Cooke v. Jarrell*, 154 W.Va. 542, 177 S.E.2d 214 (1970) (citation omitted) ("'To entitle one to a writ of mandamus, the party seeking the writ must show a clear legal right thereto and a corresponding duty on the respondent to perform the act demanded.'"). While the petitioners have endeavored to mask this monetary, contractual dispute with various allegations, such as the potential for risk to the well-being of juveniles placed in their care and the potential exclusion of multi-disciplinary teams in placement decisions, the first allegation is speculative, at best, and the second was arguably disabused by the Department's

counsel during oral argument.[3] Importantly, this Court must be circumspect on matters affecting the function of the executive branch of government and must act only upon a specific, existing duty that a state officer has violated. Indeed, this Court should not issue a writ in anticipation of some theoretical omission of duty.

Although the majority relies upon this Court's decision in *E.H. v. Matin,* 168 W.Va. 248, 284 S.E.2d 232 (1981), as support for invoking this Court's "inherent powers" and granting a moulded writ, the case at bar is nothing like *Matin*. In *Matin*, a group of patients filed a mandamus action in this Court, alleging they were "confined as mental patients in Huntington State Hospital under conditions which violate *W.Va. Code,* 27-5-9 [1977] which accords all patients a right to both humane conditions of custody and therapeutic treatment." *Matin*, 168 W.Va. at 249, 284 S.E.2d at 233. These patients sought judicial intervention for the deplorable conditions, which were described as the "'Dickensian Squalor' of unconscionable magnitudes of West Virginia's mental institutions."[4] 168 W.Va. at 249, 284 S.E.2d at 232-33 (internal citation omitted). Unlike *Matin*, the petitioners are not

[3]During oral argument, when this Court pressed the petitioners' counsel for a specific example of how a particular Department regulation conflicts with a particular provision in the new provider agreements, as opposed to the generalized concerns that had been voiced, counsel deferred the question to his co-counsel, who was equally unable to provide the Court with an adequate response. Surely, the evidentiary hearing ordered by the majority of this Court is unnecessary to answer this fundamental question.

[4]In *Matin*, this Court had the benefit of depositions of hospital staff and experts who had evaluated the clinical and custodial program at the hospital. 168 W.Va. at 251, 284 S.E.2d at 234.

a group of juveniles alleging some mistreatment arising out of their involuntary placement in the petitioners' residential facilities; instead, they are companies objecting to the change in the method of reimbursement for their provider services. Specifically, rather than reimbursing these providers based on a "bundled" rate, as had previously been done, the petitioners will be required to bill for medical treatment separately from room, board, and supervision under the respondents' new provider agreements. In short, the instant matter is nothing like the deplorable conditions that compelled the Court to act in *Matin*, where there was a clear legislative mandate "for both humane conditions of custody and effective therapeutic treatment" in West Virginia Code § 27-5-9 (1977). *Matin*, 168 W.Va. at 257, 284 S.E.2d at 237.

In addition, the majority excuses the petitioners' failure to institute a mandamus proceeding in the circuit court, which would have provided them with a record that may or may not have supported their arguments. Instead, the majority embraces this fundamental failure as the basis for awarding a moulded writ. Not only could the petitioners have simultaneously sought mandamus relief in the circuit court when they filed their petition for injunctive relief, they could have sought mandamus relief in the circuit court after they were denied injunctive relief. In short, this Court should not award mandamus relief to correct strategic errors that resulted in the petitioners' inability to demonstrate a clear legal right to the relief they seek. Moreover, and perhaps most importantly, the petitioners are not entitled

to relief in mandamus because they have another adequate remedy. *See* Syl. Pt. 2, in part,

*State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969) ("A writ of

mandamus will not issue unless three elements coexist . . . (3) the absence of another

adequate remedy."). Rather than seeking mandamus relief to avoid what the petitioners

undoubtedly believe are unfavorable contractual terms, the respondents posit that the

petitioners

> should simply exercise their contractual right to refuse to sign the new provider agreements. That negotiation process has a natural give and take. On the one hand, if enough providers refuse to sign,[5] then the Department will have to bend to their terms because the Department needs a certain number of providers to give services; on the other hand, if a majority of providers sign such that the Department can ensure adequate residential services for its children, then the protesting providers need to decide whether they can accept the new terms.

(Footnote added).

---

[5]I recognize there is a great need in this state for qualified, residential facilities where circuit courts may place juveniles when that need arises. By the same token, the petitioners are in the business of providing those services and, thus, have a strong motivation for contracting with the Department to provide those services. In fact, as the respondents point out, the majority of residential treatment providers in West Virginia have already signed contracts with the Department on these new terms. Out of the twenty-four providers in West Virginia, the respondents report that all five emergency shelters have signed contracts, and that twelve out of nineteen residential treatment providers have done so, as well. The majority does not address whether its decision impacts those signed contracts.

Lastly, I am concerned that the majority has essentially directed[6] the Juvenile Justice Commission to participate in some undefined and unspecified manner in the proceeding that the majority orders to be docketed in the circuit court "as if it were an original proceeding in mandamus in that court."[7]  While I believe that the Juvenile Justice Commission serves an important purpose, interjecting itself into this contractual dispute is not one of them.

The Juvenile Justice Commission is charged with "reviewing facilities and programs operated or contracted by the Division of Juvenile Services and the Department of Health and Human Resources. . . . and look[ing] at strengths, gaps and needs within West Virginia's juvenile justice processes."[8]  Although the Commission's original mission statement provides that "[t]hrough collaboration and communication between the Court, the Legislature, and the Executive agencies, West Virginia's investment of energy and resources

---

[6]Although the majority uses the term "encourage," the circuit court will most assuredly receive the message behind that word, which is that the Juvenile Justice Commission and the Commission to Study the Residential Placement of Children should be made to participate in the circuit court proceeding.  *See infra* note 7.

[7]The majority also directs another commission, the Commission to Study the Residential Placement of Children, to participate in this case.  This particular Commission is under the auspices of the Department. *See* W.Va. Code § 49-2-125(b) (Supp. 2016) ("There is created within the Department of Health and Human Resources the Commission to Study the Residential Placement of Children . . . .").

[8]http://www.courtswv.gov/court-administration/juvenlie-justice-commission/History. html (last visited Nov. 15, 2016).

into children who are in trouble will result in the best possible future for the State,"[9] said mission cannot constitutionally extend into active participation in litigation between residential providers and the Department or to taking any action that usurps the sole statutory authority of the Department's Secretary to enter into contracts on behalf of the Department. W.Va. Code § 9-2-6(4). Indisputably, the children of this state benefit from cooperation among all three branches of government, and while I encourage that cooperation, there is also no requirement that the Department seek this Court's imprimatur on every action taken by it.

For the reasons set forth herein, I respectfully dissent. I am authorized to state that Justice Benjamin joins in this separate opinion.

---

[9]http://www.courtswv.gov/court-administration/juvenlie-justice-commission/pdf/Mission%20Statement.pdf (last visited Nov. 15, 2016)

8